**UNITED STATES of America, Appellee,**

v.

**Paul Richard MANKO, Appellant.**

**No. 82–1523.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1982.

Decided Dec. 15, 1982.

Certiorari Denied Feb. 22, 1983. See 103 S.Ct. 1224.

Robert Bennett, Delaney, Thompson & Solum, Ltd., Minneapolis, Minn., for appellant.

James M. Rosenbaum, U.S. Atty., Janice M. Symchych, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Appellant Paul Richard Manko challenges his conviction for robbery of a federally insured financial institution, a violation of 18 U.S.C. § 2113(a). For reversal, Manko contends (1) that the district court erred in refusing to suppress certain in-court and out-of-court identifications; (2) that he was denied effective assistance of counsel; and (3) that insufficient evidence was introduced to support the conviction. We affirm.

The circumstances from which this case arose are briefly as follows. On October 29, 1981 a lone white male robbed a Minneapolis bank. As the assailant left the institution, he was photographed by a bank surveillance camera; on behalf of the Federal Bureau of Investigation this photograph was broadcast on the local news on the night of the robbery. As a result, the man depicted in the photograph was identified as the appellant, Paul Manko.

This surveillance photograph was utilized by the FBI during the ensuing investigation. Both the teller on duty at the time of the robbery and her supervisor, who was also present during the incident, identified the person in the photograph as the perpetrator. A security guard in the city's skywalk system also identified the individual depicted in the surveillance photo as the man he had encountered in the skywalk near the bank, twice prior to the robbery and once directly thereafter. In addition, two bartenders in a nearby bar identified the man in the photograph as the same

person who had spent several hours in their establishment shortly after the robbery had occurred. Along with purchasing numerous drinks, the individual had exchanged approximately $250.00 in one dollar bills, the amount of that denomination taken in the robbery, for larger currency.

Thereafter, the FBI constructed a six-person photographic lineup, which included a photograph of Manko. With the exception of one bartender, this lineup was shown to each of the above-mentioned persons, all of whom identified Manko as the person they had encountered.

Manko was subsequently arrested and charged with the robbery. Following trial to a jury, he was found guilty and sentenced to six years imprisonment. This appeal followed.

In his initial assignment of error, Manko contends the district court[1] erred in refusing to suppress certain in-court identifications, along with testimony concerning the pretrial identification by the skywalk security guard. He argues that improper out-of-court identification procedures tainted both the in-court and pretrial identifications, resulting in a denial of due process.

Prior to trial, Manko filed a motion to suppress the pretrial identifications, alleging that the utilization of the single surveillance photograph and the six-person photographic lineup was impermissibly suggestive. At a hearing on this motion before a United States magistrate, the bank teller and her supervisor were scheduled to testify. While waiting to enter the courtroom, they observed Manko being escorted by two marshals, in handcuffs and attired in jail-issue clothing. Both bank employees identified Manko at that time as the individual who had committed the robbery. At the hearing, both also identified appellant as the perpetrator of the crime.

The magistrate's subsequent recommendation that Manko's suppression motion be denied was adopted by the district court. Based on the courthouse confrontation with the bank personnel, however, a second motion to suppress was filed. Following a hearing based in part upon a stipulation concerning the manner in which the confrontation had occurred, the magistrate recommended the denial of Manko's second motion. The district court also adopted this recommendation.

At the outset of trial, Manko again unsuccessfully sought to suppress the identifications. During trial, the bank teller and her supervisor identified Manko as the perpetrator of the robbery. In addition, both bartenders testified that Manko was the individual present in the bar shortly after the robbery. Finally, the skywalk security guard's pretrial identification of Manko from the photographic display was also introduced as evidence.

As indicated, Manko now contends the district court erred in allowing this identification testimony. He contends the confrontation with the bank personnel, use of the single surveillance photograph and use of the six-person photographic lineup all constitute impermissibly suggestive identification procedures, and that due process requires the suppression of the identification evidence resulting therefrom.

■ Our analysis of allegedly improper identifications focuses on the reliability of the challenged evidence. "[R]eliability is the linchpin in determining the admissibility of identification testimony ...." *Manson v. Braithwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *see Bivens v. Wyrick*, 640 F.2d 179, 181 (8th Cir. 1981); *United States v. Anderson*, 618 F.2d 487, 491–92 (8th Cir.1980). Thus, even where an impermissibly suggestive identification procedure has been employed, identification evidence may properly be admitted where, in the totality of the circumstances, the suggestive procedure did not give rise to a "very substantial likelihood of irreparable misidentification." *See Braithwaite*, 432 U.S. at 116, 97 S.Ct. at 2254. Five factors are to be considered in ascertaining whether a challenged identification was sufficiently reliable. *Id.* at 114, 97 S.Ct. at 2253. We examine

1. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the length of time between the crime and the confrontation. *Id.; Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Braithwaite,* 432 U.S. at 114, 97 S.Ct. at 2253.

■ In the present circumstances, even assuming the contested identifications involved somewhat suggestive procedures, we are convinced the identifications themselves were reliable; that is, there was not a "very substantial likelihood of irreparable misidentification." As such, the identifications were properly admitted at trial.

The record indicates each witness had a good opportunity to observe the individual he or she was subsequently asked to identify. The bank employees viewed the robber for at least several minutes, at very close range. Similarly, both bartenders served the customer they later identified as Manko for at least half an hour; both were in close proximity to the individual during this period. The skywalk security guard encountered the person he identified as Manko on three occasions, twice speaking with him face-to-face. Moreover, none of these witnesses could be termed a casual or passing observer, and the descriptions they provided were accurate and detailed. Each identification was made with a minimum of uncertainty. Finally, the time which elapsed between the crime and the identifications was not so great as to defeat their reliability. The out-of-court identifications were made within a matter of days after the robbery, and the trial itself was held approximately four months thereafter. On this record, we conclude the challenged identifications were reliable and in the totality of the circumstances were properly admitted into evidence.

Manko also contends the actions of the district court and counsel denied him effective assistance of counsel both during pretrial and trial stages. Principally, he argues that an irreconcilable conflict developed between himself and trial counsel; this conflict, Manko asserts, was apparent to the jury and consequently prejudiced his defense.

We have carefully reviewed the record with respect to these contentions, specifically in connection with the particular allegations of ineffective representation urged by Manko. Our review convinces us that his contentions in this regard are completely without merit and we forego further discussion of them.

■ Manko's final assignment of error challenges the sufficiency of the evidence produced to support his conviction. In considering this contention, we view the evidence in its entirety, and in the light most favorable to the jury verdict. *See, e.g., United States v. Bierey,* 588 F.2d 620, 626 (8th Cir.1978), *cert. denied,* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979). Applying this standard to the case at bar, we are satisfied that sufficient evidence was adduced to support the conviction. As noted, two eyewitnesses to the robbery identified Manko as the perpetrator of the crime. Additional identification testimony from persons in the vicinity of the bank shortly after the robbery corroborated this testimony. Further, acquaintances of Manko identified the man depicted in the surveillance photograph as the defendant. These identifications, along with other testimony and evidence presented at trial, were clearly sufficient to sustain the conviction.

We have carefully considered all of Manko's assignments of error and find them to be without merit. From what has been said, it follows that the judgment of conviction should be, and it is, affirmed.