**UNITED STATES of America, Appellee,**

v.

**Stanley D. DEPEE, Appellant.**

**No. 83–1864.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 28, 1984.

Decided March 8, 1984.

Jack T. Lassiter, Little Rock, Ark., for appellant.

George W. Proctor, U.S. Atty., E.D. Ark. by Terry L. Derden, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ROSS, McMILLIAN and FAGG, Circuit Judges.

PER CURIAM.

Dr. Stanley D. Depee appeals from a final judgment entered in the District Court [1] for the Eastern District of Arkansas upon a jury verdict finding him guilty of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841. Depee was sentenced to concurrent terms of eight years imprisonment for each offense, followed by a special parole term of three years. For reversal Depee argues that the district court erred in denying his motion to suppress cocaine seized pursuant to a search warrant because the warrant was unsupported by probable cause. For the reasons discussed below, we affirm.

The affidavit in support of the application for a search warrant contained the following information supplied by a "reliable confidential informant":

---

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

1. A man known to the informant as "Doc Depee" was travelling from Florida to Little Rock in either a silver Cordoba or White Dodge van for the purpose of delivering a large quantity of cocaine.

2. The informant had previously stated to authorities that Delbert Sinor and Depee were associates in illicit drug trafficking, and Depee was driving Sinor's Cordoba.

3. Depee was to meet Sinor, Lynn Lasemon, John Offutt, and two other subjects in Little Rock, Arkansas, where the delivery of cocaine was to take place.

4. These individuals were to meet at the Executive Inn.

5. Depee, Sinor, Lasemon and Offutt were physically described.

6. Depee would arrive in Little Rock with the cocaine at approximately 7:00 p.m. on January 29, 1982.

7. Sinor and Lasemon would arrive at the Executive Inn at approximately 5:00 p.m. in a black 4-wheel drive Dodge pickup, Arkansas license JBG–189.

8. Offutt would arrive at the Executive Inn in a white Lincoln, Arkansas license IJA–764.

9. The three would wait and later contact Depee to complete the cocaine delivery.

According to the affidavit, Drug Enforcement Agency (DEA) agents established the following through their independent surveillance and investigation:

1. The license plate of the Cordoba was ITN–831 and was registered to Delbert Sinor, who had been convicted in 1981 of a major drug violation.

2. On January 29, 1982, at 4:00 p.m., a white Lincoln with Arkansas license number IJA–764 was located in the Executive Inn parking lot.

3. At 5:15 p.m., a Dodge pickup, license JBG–189, arrived at the Executive Inn with Sinor and Lasemon. Holiday Inn records indicated that Offutt had checked into Room 805.

4. At 7:15 p.m., a silver Cordoba circled the block at the Executive Inn, but drove to the Holiday Inn in North Little Rock. The individual driving the car was Depee, and he checked into Room 175.

5. At 1:30 a.m., Offutt's Lincoln and the black pickup driven by Sinor and Lasemon left the Executive Inn and drove to the Holiday Inn in North Little Rock where all three entered Depee's room. At 2:54 a.m., Offutt left Depee's room, entered the Lincoln, and drove south. At 8:30 a.m., Depee and Sinor left Depee's room carrying handbags to their car. Lasemon then left Depee's room and walked to the parking lot. When Sinor and Depee arrived at the Cordoba, Depee opened the trunk and deposited the handbags. When surveillance officers approached, Depee "quickly" slammed the trunk. Sinor, Depee and Lasemon were arrested.

After Depee was arrested, DEA agents impounded the Cordoba at the Little Rock Police Department and applied for a search warrant. A United States magistrate issued a search warrant for the car, which resulted in the discovery of a large quantity of cocaine in the trunk. Depee filed a pretrial motion to suppress the cocaine. At the hearing on the suppression motion, the sole issue raised by Depee involved the truth of the statement in the affidavit supporting the warrant that the trunk of the Cordoba was open when DEA agents approached. Depee testified that he had closed the trunk immediately upon depositing the suitcase. After hearing this testimony, the district court ruled that the informant's tip, as corroborated by law enforcement officials, was sufficient to support the magistrate's finding of probable cause.

In this appeal Depee claims that the information contained in the affidavit was insufficient to support a probable cause determination. He points out that the confidential informant was not completely accurate in all the details he supplied and the only information the authorities were able to corroborate through investigation and surveillance involved nonincriminating, facially innocent behavior. Moreover, Depee notes that the affidavit failed to set forth

the informant's basis for his knowledge and particular facts bearing on the informant's reliability.

In *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) *(Gates)*, the Supreme Court abandoned the rigid two-pronged test under *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for determining whether an informant's tip established probable cause for issuance of a search warrant. The Court adopted a totality of the circumstances approach in which

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates,* 103 S.Ct. at 2332 (citations omitted).

We find that the information set forth in the affidavit was sufficient to support a finding of probable cause. The confidential informant was incorrect about some of the details surrounding the drug deal, but courts have never imposed a requirement of infallibility on police informants. *Id.* 103 S.Ct. at 2335 n. 14. The informant supplied accurate, detailed information about the time and date of Depee's arrival in Little Rock, the parties involved in the drug transaction, where they would initially meet, and the vehicle each would drive. This information, corroborated by law enforcement officials, permitted the magistrate to infer that the informant had obtained his information in a trustworthy manner and was not relying on "a casual rumor circulating in the underworld." *See United States v. Strini,* 658 F.2d 593, 598 (8th Cir.1981), *citing Spinelli v. United States,* 393 U.S. at 416, 89 S.Ct. at 589. The fact that these details when viewed in isola-

tion were not inconsistent with innocent behavior was of little significance in light of all the circumstances. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Gates,* 103 S.Ct. at 2335 n. 13. *See United States v. Mendoza,* 722 F.2d 96, 101–02 (5th Cir.1983). Therefore, the informant's tip as corroborated and supplemented by independent investigation was sufficient to permit the magistrate to conclude that "there [was] a fair probability that contraband or evidence of crime [would] be found in a particular place." *Gates,* 103 S.Ct. at 2332.

Accordingly, the judgment of the district court is affirmed.