UNITED STATES of America, Appellee,

v.

Nick ARCOBASSO, Appellant.

No. 88–2708.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1989.

Decided Aug. 16, 1989.

G. Richard Fox, St. Louis, Mo., for appellant.

Richard L. Poehling, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, and ROSS, Senior Circuit Judge, and CAMBRIDGE,* District Judge.

ROSS, Senior Circuit Judge.

Nick Arcobasso appeals from his conviction of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). On appeal, Arcobasso challenges the district court's[1] adoption of the magistrate's[2] recommendation that his motion to suppress evidence and statements be denied, certain evidentiary rulings, and the constitutionality of the Federal Sentencing Guidelines. We affirm.

The evidence adduced at the suppression hearing established the following. On May 8, 1988, at 1:51 a.m., Officers Willis and Hopkins of the Breckenridge Hills Police Department responded to a call for "shots fired within [a] residence." Upon arrival, they heard the clicking sound of a weapon being "dry-fired" (trigger being pulled on an unloaded gun). While on the stairs leading to the front porch, Willis looked through an open window and saw Arcobasso sitting on a chair dry-firing a gun. Officers tapped on the window and asked Arcobasso to come out, whereupon Arcobasso climbed out the window.

Officers patted him down for weapons but none were found, and then asked if anyone else was in the house to which Arcobasso replied "Rick." Believing there may have been a shooting victim inside, the officers informed Arcobasso of his *Miranda* rights.[3] Upon entering the house to do a protective sweep, Willis saw and seized a shotgun in plain view leaning against a doorjamb in the hallway. He unloaded a round of ammunition from the gun's chamber. He also found an individual named Rick Gaines who did not know if there were others in the house. Willis asked Gaines the other subject's name because Willis did not "know who he was for sure. He had no [identification]." Gaines replied "Nick." Accompanied by Gaines, Willis completed a search of the house. Willis moved the chair where Arcobasso had been seated and retrieved a revolver. He also observed empty and live rounds of ammunition in an open dresser drawer.

Back outside Arcobasso acknowledged ownership of the shotgun and admitted firing the pistol. Willis advised Arcobasso that it was illegal for him to be around guns (because he was a convicted felon). At this point, Willis re-entered the house to retrieve the ammunition he had observed. Arcobasso was then handcuffed and taken into custody.

Arcobasso filed a pretrial motion to suppress the seized firearms, ammunition, and his statements to the officers. After a hearing, the magistrate denied the motion, finding that the officers' observations gave them probable cause to believe a felony had been committed, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The magistrate also found that exigent circumstances justified the warrantless entry and search of the house, citing *Mincey v. Arizona*, 437 U.S. 385, 392–93, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978), and *Warden v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782 (1967), and further that the firearms and ammunition were seized in plain view incident to a protective search, citing *United States v. Jones*, 635 F.2d 1357 (8th Cir. 1980). Finally, the magistrate ruled that Arcobasso's statements were made knowingly and voluntarily after being informed of his *Miranda* rights. The district court adopted the magistrate's findings and denied the motion.

It was stipulated that Arcobasso had six prior felony convictions. At trial, Arcobasso attempted to elicit information from Wil-

---

* The HONORABLE WILLIAM G. CAMBRIDGE, United States District Court Judge for the District of Nebraska, sitting by designation.

1. The Honorable Edward L. Filippine, United States District Court Judge for the Eastern District of Missouri.

2. The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Missouri.

3. At trial, Hopkins testified that at this time, Willis asked the subject his name to which he replied "Nick Arcobasso."

lis on cross-examination about his supervisor, Corporal Sampson. Defense counsel inquired if Willis was aware that Sampson had extorted merchandise from the Arcobassos. The government's objection was sustained. On Arcobasso's direct examination, he was asked if Sampson had ever made any threats against him. The government's objection to this line of questioning was again sustained over the offer of proof that Sampson had stated to Arcobasso that Sampson intended to get Arcobasso any way he could.

Upon the jury's verdict and conviction, Arcobasso received a term of fifteen years imprisonment with a three-year period of supervised release. He appeals, arguing that the district court erred in: (1) adopting the magistrate's findings that probable cause existed for his arrest, that exigent circumstances justified the warrantless search, and that seizure of the firearms was appropriate for the reason that they were in plain view; (2) denying his motion to suppress; (3) excluding evidence of Corporal Sampson's prior threats against and dealings with the Arcobassos; and (4) sentencing him under the Federal Sentencing Guidelines.

■ Arcobasso first argues that he was placed under arrest when he exited the house, while the government asserts that Arcobasso was arrested when placed in handcuffs after the search of the house. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), investigative seizures are permissible when based on a reasonable, articulable suspicion that a person has committed a crime. While under detention, a suspect may be asked (but need not answer) questions to determine his identity and to obtain information about the officer's suspicion. *See Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984). We believe that Arcobasso was detained under reasonable suspicion, *see United States v. Sadosky*, 732 F.2d 1388, 1391–92 (8th Cir.1984), until that suspicion ripened into probable cause for arrest. Arcobasso, a known felon, volunteered that he owned the gun and was firing it. The search of the house

resulted in the seizure of guns and ammunition. In view of the totality of the circumstances, these facts provided sufficient probable cause to support Arcobasso's arrest. *See United States v. Purham*, 725 F.2d 450, 455 (8th Cir.1984).

■ Even if Arcobasso is deemed to have been placed under arrest upon exiting the house as he contends, probable cause still supports his arrest. The magistrate held that the report of gunshots fired in the house, coupled with Willis' observation of Arcobasso "dry-firing" a gun, constituted probable cause to believe Arcobasso was committing a felony, *i.e.*, a violation of Mo.Rev.Stat. § 571.030.1(3) (knowingly shooting into a dwelling). This finding should not be set aside unless clearly erroneous. *See United States v. Everroad*, 704 F.2d 403, 405 (8th Cir.1983). We thus hold that substantial evidence supports the finding that probable cause existed for Arcobasso's arrest regardless of whether it occurred upon his exit from the house or after the house was searched. *See United States v. Ross*, 713 F.2d 389, 392 (8th Cir. 1983).

■ Arcobasso contends that the search of the house was not a valid search incident to arrest because he was outside the immediate vicinity of the house. The magistrate, however, found that the search was valid under the exigent circumstances exception to the warrant requirement because the officer reasonably believed that a person inside may have been in need of immediate aid due to Arcobasso's response that "Rick" was inside, or the officer reasonably believed that Rick may have posed a danger to the officer's safety. This court affirms a trial court's finding of exigent circumstances unless those findings are clearly erroneous. *United States v. Palumbo*, 735 F.2d 1095, 1096–97 (8th Cir.), *cert. denied*, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984).

Because Willis suspected that there may have been a shooting victim or another armed person inside, we agree that exigent circumstances existed to justify the warrantless search. *See Mincey v. Arizona*, *supra*, 437 U.S. at 392–93, 98 S.Ct. at 2413.

The items seized were thus admissible. Arcobasso's statements were also admissible because they were not coerced and he had been advised of his *Miranda* rights.

■ Arcobasso alleges that the "plain view" rule is not applicable because Officer Willis was not immediately aware of the incriminating nature of the weapons, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and stating that Willis was unaware of his identity and past felony convictions at the time of seizure. To the contrary, the officers testified that they were aware at all times that "Nick Arcobasso" was a convicted felon. Although neither knew him by sight, Hopkins had made a call for service approximately one year earlier at the residence of Donna Arcobasso. Willis testified at the suppression hearing that Arcobasso had no proof of identification. Although Willis was not "sure" of the subject's name, Gaines told him that the subject's name was "Nick." At trial it was made apparent that Arcobasso gave his name and only after the identification did Willis enter the house to search for bodies of victims or suspects and seize the weapons. Immediately thereafter, Willis told Arcobasso he was not to be around guns.

Under the plain view rule, this court has allowed officers legally present to "exceed the original scope of the [search] where they are engaged in an otherwise lawful search and inadvertently discover contraband or other items the incriminating nature of which is immediately apparent." *United States v. Ellison*, 793 F.2d 942, 948 (8th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986). Here, as indicated, Willis was lawfully searching the house. We find that he possessed sufficient knowledge at the time the weapons were seized in plain view to believe they were evidence of illegal activity. *See United States v. Jones, supra*, 635 F.2d at 1358–59 (observations of guns plainly evident in apartment not suppressed where officers were aware that Jones rented apartment and had prior felony conviction but had no information that Jones had fired shots or had entered apartment); *see also*

*United States v. Wright*, 641 F.2d 602, 606 (8th Cir.) (considering collective knowledge of officers on the scene), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981). Further, the scope of the search of areas of the house in which a body could be found was appropriate.

■ We also find persuasive the government's alternate assertion that had the officers not known Arcobasso's identity, the weapons were properly unloaded and seized as a precaution to assure their safety and that of any other individual who might have been present. *See United States v. Antwine*, 873 F.2d 1144, 1147 (8th Cir.1989) ("a warrantless seizure of a weapon may be considered 'reasonable' within the meaning of the Fourth Amendment when justified by an officer's legitimate concern for someone's safety") (citing *New York v. Quarles*, 467 U.S. 649, 653 n. 3, 104 S.Ct. 2626, 2630 n. 3, 81 L.Ed.2d 550 (1984)); *United States v. Robinson*, 756 F.2d 56, 60 (8th Cir.1985) (temporary seizure and unloading of handgun a reasonable precaution for safety of persons on premises; when officers learned of prior conviction, handgun became subject to seizure as illegal weapon possessed by felon); *United States v. Malachesen*, 597 F.2d 1232, 1234–35 (8th Cir.), *cert. denied*, 444 U.S. 902, 100 S.Ct. 214, 62 L.Ed.2d 139 (1979). Therefore, the district court's ruling on the motion to suppress is affirmed as it is not clearly erroneous.

■ The district court ruled that the matters concerning Corporal Sampson were irrelevant since his only involvement in the case was to review the police report. Arcobasso alleges for the first time on appeal that the evidence regarding Sampson was not offered for the truth of the matters asserted therein. At trial, however, Arcobasso's offers of proof on Sampson's alleged extortion and proposition to Arcobasso's wife were presented as factual. The district court's rulings on admissibility of evidence as well as those governing cross-examination are not to be disturbed absent an abuse of discretion. *United States v. Milham*, 590 F.2d 717, 721 (8th Cir.1979). We conclude that the district court did not

**1308**

abuse its discretion in excluding the proffered testimony from evidence.

Finally, Arcobasso mentions several ways in which the Sentencing Guidelines resulted in a denial of his right to due process. The due process argument has been foreclosed by *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Further, because Arcobasso received the minimum sentence mandated by statute, the government argues he was not affected by the Sentencing Guidelines. We agree that Arcobasso was not denied due process in the sentence he received.

Accordingly, Arcobasso's conviction and sentence are affirmed.